UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case Number: 16-20963-CIV-GAYLES

FILED by __PG__ D.C.

MAY 31 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

ROBERT JOSEPH SARHAN, M.D.
        Plaintiff

v.

THE BOARD OF TRUSTEES
MIAMI DADE COLLEGE                            Demand for Jury Trial
        Defendants,

## PLAINTIFF'S AMENDED COMPLAINT AGAINST THE DEFENDANTS FOR VIOLATION OF TITLE VII FOR DISCRIMINATION IN MIAMI DADES COLLEGE HIRING PRACTICES AND RETALIATION FOR FILING EEOC AND LAWSUIT

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") , and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct Unlawful Employment Practices and Retaliation on the basis of Race and National Origin, and to provide appropriate relief to the Plaintiff, Robert Joseph Sarhan, MD, hereinafter known as the "Plaintiff") an employee who was adversely affected by such practices. Plaintiff alleges that the Defendants, The Board of Trustees Miami Dade College (hereinafter known as the "Defendants") violated Title VII when the Defendants denied the Plaintiff a full time faculty position to teach the Physician Assistant Program, since Plaintiff was Qualified and was already employed by Miami Dade College as an Adjunct Professor earning less than the poverty level and the Defendants hired were TWO HISPANIC MALES that WERE FRIENDS and NEVER WORKED for Miami Dade College to teach the Physician Assistant Program, because of

1

Plaintiff's Race and National Origin, as part of an effort to limit, segregate or classify Miami Dade College Professors on the bases of Race and National Origin in violation of 42 U.S.C. § 2000e-2(a)(1)(2). After teaching Summer classes for 4 consecutively, Defendants have now denied the Plaintiff Summer classes due to Retaliation.

## JURISDICTION AND VENUE

1. This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f)(1), 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 1981a.

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 451, 1331, 1337, 1343, 1345, 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. § 1981a. This action is also authorized and instituted pursuant to § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-5(f) (1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices alleged herein were committed within the jurisdiction of the United States District Court for the Southern District of Florida.

## PARTIES AND OTHER PERSONS

4. Plaintiff, The EEOC, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and authorized the Plaintiff to bring this action by Title VII, 42 U.S.C. § 2000e-5(f)(1).

5. At all relevant times, the Miami Dade College is located in Miami Dade County and in the State of Florida.

6. At all relevant times, Miami Dade College has continuously employed over 500 employees.

2

7. Plaintiff was hired by Defendants in January 2012 and has worked as an Adjunct Professor teaching Biology, Microbiology and Microbiology Lab, Anatomy and Physiology I & II and Labs I & II and Introduction to Health Care.

## FACTUAL ALLEGATION

8. More than 30 days prior to the institution of this lawsuit, Plaintiff filed a charge with EEOC alleging that Defendants violated Title VII. All conditions precedent to the Institution of this Lawsuit.

9. On December 18, 2015, the EEOC determined that there was reasonable cause to believe that the Defendant's discriminated against the Plaintiff, in that the Defendants engaged in unlawful employment practices by refusing to hire a class of Non Hispanic individuals for Full Time Faculty Positions based on their National Origin, Non Hispanic, and Race, in violation of Section 703(a)(1)(2) of Title VII, 42 USC 2000e-2(a)(1)(2). Specifically, Defendants engaged in a pattern or practice of discriminatory hiring practices by hiring Hispanics applicants to fill Full Time Faculty Positions that were available positions to the exclusion of similarly or more qualified non-Hispanic applicants, thereby denying non Hispanic applicants employment based on their National Origin. Plaintiff was denied the position to teach the Physician Assistant Program because of his Race and National Origin, and that the Defendants who are of Hispanic Origin, are hiring Hispanics and give them better paying jobs and full time faculty positions over Whites, Blacks and Others.

10. Plaintiff applied to teach the Physician Assistant Program, there were two positions available that paid $70,000.00 per year. Plaintiff earned less than $12,000.00 per year as an Adjunct Professor for the past 4 years, this would have been a $60,000.00 per year increase in salary, which would have saved Plaintiff home from foreclosure and would not have had to file

Bankruptcy. Plaintiff was Qualified to teach the Physician Assistant program and was already employed with Miami Dade College.

11.     The Conciliation efforts required by law were unsuccessful.

(a)     In February 2015, the EEOC issued to Miami Dade College a Letter of Determination inviting Miami Dade College to join with the EEOC in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

12.     In March 2015, Miami Dade College refused mediation.

13.     At least for the last 12 to 20 years or more, since Edward Padron has become President of Miami Dade College, Defendants have engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a). To wit:

14.     On December 1, 2014, Defendants denied the Plaintiff to teach the Physician Assistant Program at Miami Dade Medical Campus located at 950 NW 20 St. Miami Florida 33127, even though Plaintiff was employed at Miami Dade College as an adjunct professor and was Qualified to teach the Program.

15.     Defendants denied the Plaintiff full time faculty positions to teach the Physician Assistant Program in order to give these two positions that were available, to TWO HISPANIC MALES that were FRIENDS and NEVER worked for Miami Dade College.

16.     Defendants have denied Plaintiff many other positions that Plaintiff has applied for, prior to applying to teach the Physician Assistant position. Plaintiff has never received an interview, even though was employed by Miami Dade College and was Qualified to teach all positions that Plaintiff applied for.

17.     Defendants hired two Hispanic Males as part of an effort to give Hispanic top paying jobs. While Whites, Blacks and Others were hired in Adjunct Positions, much lower paying jobs,

4

($60,000 per year less) to cover up this secret policy that Edward Padron, The Board of Trustees and Miami Dade College have implemented for many years.

18.     Plaintiff was denied the position to teach the Physician Assistant Program pursuant to an effort to limit, segregate, and/or classify the employees of Miami Dade College in a way that would deprive or tend to deprive the Plaintiff and other individuals of employment opportunities because of their Race and National Origin, in violation of 42 U.S.C. § 2000e-2(a)(b)(c).

19.     Each of the unlawful employment practices complained of above was intentional.

20.     Each of the unlawful employment practices complained of above was done with malice and reckless indifference to Plaintiff's Federally Protected Rights.

21.     In November 2014, Plaintiff gave a presentation of Pulmonary Hypertension to six Hispanic Females and one Hispanic Males, where is the Diversity, this is because of the unlawful hiring practices, which are intentional and why there is no Diversity in this Department at Miami Dade College.

22.     Due to Miami Dade College Discrimination in their hire process, Plaintiff was denied full time employment, Miami Dade College hired two Hispanics named Illich V. Galeas and his friend and previous co-worker in Spain, Juan A De Llano, BOTH Never working for Miami Dade College, and now earning approximately $70, 000.00 per year.

23.     Plaintiff has worked for Miami Dade College as a part time Professor for 4 years teaching Microbiology and Lab, Anatomy and Physiology I & II with Lab, Introduction to Health Care and Biology and earned approximately 10,000 to 12,000 dollars per year.

24.     The Plaintiff is a medical doctor and a graduate of the University of Florida in Gainesville Florida and earned a Bachelor's Degree in Science and graduated with High Honors.

25. The Plaintiff went to Medical School at the University of South Carolina School of Medicine and Ross University School of Medicine where he did his clinical training at Yale New Haven Hospital and Affiliate Hospitals in Connecticut.

26. The Plaintiff graduated in 1992 and worked as a House Physician at Jackson Memorial Hospital for 2 years full time and 2 years part time and in 1994 started working for the Department of Justice Federal Bureau of Prisons for the next 13 years till 2007, treating patients for Hypertension, Diabetes, Heart Disease, Gastrointestinal diseases, Kidney Stones, Sport Injuries, Stabbings, suturing wounds, treating patients for Heart Attacks, Pneumonia and many more ailments seen in a Family Practice.

27. In November 2014 the Plaintiff went to his first interview and was interviewed by approximately nine Hispanics Males and Females and returned for a second interview and to do a Power Point Presentation on Pulmonary Hypertension.

28. The second interview was an interview was with a Hispanic Female named Dayne Alonso and the Plaintiff gave a fifteen minute Power Point Presentation on Pulmonary Hypertension. The Plaintiff still has the Power Point Presentation today and did an excellent job in how to diagnose Pulmonary Hypertension. The interview went well and everything seemed positive in every manner for the position.

29. The Power Point Presentation material was taken by a Board Certified Internist and was all accurate and easily understandable.

30. The Presentation was given in front of six Hispanic Females and one Hispanic Male, absolutely No Diversity.

31. The Plaintiff's third interview went fantastic, the Medical Doctor that interviewed me, was a Hispanic Male and he stated that I had all the qualifications and would do an excellent job.

6

32. On December 1, 2014, I received a letter not getting the position. I immediately called my supervisor Mark Everett complaining that this was a bias and prejudicial hiring process. How could this happen, where is the Diversity here at Miami Dade College, everyone here is Hispanic and it is not because of Demographics, it is because the Hispanics and Edward Padron are giving the Best jobs to the Hispanics. **Exhibit A**

33. I immediately filed an EEOC Complaint and the EEOC Officer stated, and after two weeks or more he said it seemed like I had a valid complaint.

34. EEOC requested if I would like to mediate, I said yes, Miami Dade College refused mediation.

35. EEOC gave Plaintiff right to sue on December 18, 2015.

36. By not getting this position, the Plaintiff had to file Bankruptcy and is in Foreclosure losing his home. The Plaintiff has suffered irreparable damage due to not being hired to full time faculty. The Plaintiff has lost all most of his Lower and Upper teeth due to not being able to afford Dental and Medical care. The Plaintiff has had Insomnia and Anxiety over the loss of this and other Position which would have been perfect for the Plaintiff and the pay would of been life saving.

37. While working at Miami Dade College as an Adjunct Professor, Plaintiff also had to worked as a Security Guard at Club 11, the Plaintiff suffered a broken nose and lacerations to his face, due to a head butt which severely injured the Plaintiff, while being attacked by a Professional MMA from Australia named Cody Raymond.

38. The Plaintiff has met with other Adjunct Professor who do not want to be recognized due to Retaliation and being fired, there will be 6 adjunct professors coming to testify at this time, but would like the right to bring in more witness through the discovery period.

7

39. Confidential 1, White Male, worked for Miami Dade College 9 years never received Full Time Faculty.

40. Confidential 2, Black Female, worked for Miami Dade College for 10 years, Never received full time Faculty.

41. Confidential 3, White Male, worked for Miami Dade College for 10 years, never received full time.

42. Confidential 4, American Indian, worked for Miami Dade College for 10 years, never received Full Time Faculty.

43. Confidential 5, Black Male, worked for Miami Dade College 5 years, never received Full Time Faculty.

44. Confidential 6, Black Male, was supposed to be hired as Full Time Faculty and was hired as an Adjunct, cannot get Full Time Faculty.

45. Plaintiff claims that the Defendants have recently Retaliated against the Plaintiff by denying Plaintiff Summer Classes. Plaintiff has worked every Summer for the past four years and although Plaintiff was offered to teach at Mercy Hospital on Thursday and Friday, Plaintiff could not teach on Friday. Plaintiff spoke to his other employer and stated Plaintiff can continue working on Tuesdays and Thursdays as Plaintiff has worked for the past 4 years, but Plaintiff must be available to work on Friday. Plaintiff states, "has worked for Miami Dade College for years on Tuesday and Thursdays nights and this is the first Summer Plaintiff has been asked to work Fridays and has been denied Summer Employment.

46. The effect of the practices complained of in Paragraphs 1 through 45 above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as

an employee because of her opposition to employment practices made unlawful by Title VII and her filing of a Charge of Discrimination with the Commission.

47. The unlawful employment practices complained of in Paragraphs 1 through 45 were intentional.

48. The unlawful employment practices complained of in Paragraphs 1 through 45 were done with malice or reckless indifference to the federally protected rights of Plaintiff to be free of retaliation on the basis of opposition to unlawful employment practices and participation in an EEOC proceeding.

## STATEMENT OF CLAIMS

## COUNT ONE VIOLATION OF TITLE VII
## DISPARATE TREATMENT AT MIAMI DADE COLLEGE

49. More than 30 days prior to the institution of this lawsuit, Plaintiff filed a charge with EEOC alleging that Defendants violated Title VII. All conditions precedent to the Institution of this Lawsuit.

50. On December 18, 2015, the EEOC determined that there was reasonable cause to believe that the Defendant's discriminated against the Plaintiff, in that the Defendants engaged in unlawful employment practices by refusing to hire a class of Non Hispanic individuals for Full Time Faculty Positions based on their National Origin, Non Hispanic, and Race, in violation of Section 703(a)(1)(2) of Title VII, 42 USC 2000e-2(a)(1)(2).

51. Specifically, Defendants engaged in a pattern or practice of discriminatory hiring practices by hiring Hispanics applicants to fill Full Time Faculty Positions that were available positions to the exclusion of similarly or more qualified non-Hispanic applicants, thereby denying non Hispanic applicants employment based on their National Origin. Plaintiff was

denied the position to teach the Physician Assistant Program because of his Race and National Origin, and that the Defendants who are of Hispanic Origin, are hiring Hispanics and give them better paying jobs and full time faculty positions over Whites, Blacks and Others.

## COUNT TWO-VIOLATION OF TITLE VII
## DISPARATE TREATMENT AT MIAMI DADE COLLEGE

52. Plaintiff brings this action on behalf of himself and all other Adjunct Professors similarly situated.

53. Plaintiff's incorporate and re-allege paragraphs 1 through 48 herein.

54. Defendants engaged in a pattern or practice of discriminating against the Plaintiff, who is Non Hispanic employee, where Plaintiff was denied Full Time Employment to teach the Physician Assistant Program and other positions that Plaintiff applied for over the last 4 years.

55. Defendants denied Plaintiff and other Non Hispanics Full Time Faculty Positions.

56. Defendants denied Plaintiff equal opportunities for promotion to Full Time Faculty, that Plaintiff was Qualified and interested in.

57. Defendants conduct of engaging in a pattern or practice of discriminating against the Plaintiff and its Non Hispanic Employees by promotion decisions on the basis of National Origin and Race, violates Title VII of the Civil Rights Act of 1964.

58. Defendants discriminatory practices described above have denied Plaintiff and Non Hispanic employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

59. Defendants actions or inactions were based in malice or a reckless indifference to the protected rights of Plaintiffs, entitling them to an award of punitive damages.

60. Furthermore, Plaintiff is an Adjunct Professors still employed by Miami Dade College and have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein. The injunctive relief Plaintiff seeks is the only means by which he will be able to secure complete and adequate relief and end the irreparable injury that he has suffered and will suffer as a result of Defendants discriminatory behavior.

61. Plaintiffs, therefore, request relief as provided in the Prayer for Relief below.

## COUNT THREE
## FLORIDA LABOR LAW UNLAWFUL EMPLOYMENT PRACTICES
## FLORIDA STATUTE §760.10 (1)(a)(b)(2)

62. Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth herein.

63. **FS § 760.10   Unlawful employment practices.**—It is an unlawful employment practice for an employer:

64. To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

65. Defendants failed or refused to hire Plaintiff to gain Full Time Faculty Position/Promotion, who is a White/Caucasian Middle Eastern American Male, born here in Miami Florida and states he was denied employment due to National Origin and Racial Discrimination by the Defendants, so they can hire Two Hispanic Males that Never Worked for Miami Dade College and who were friends, which is in violation of FS § 760.10, Unlawful Employment Practices.

11

66. To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

67. Plaintiff was denied employment opportunities which adversely affected Plaintiffs status as an employee because the Plaintiff is a Non Hispanic White Male with Middle Eastern American decent, and Defendants are promoting Hispanics giving them Full Time Faculty Positions over Non Hispanics.

68. It is an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status or to classify or refer for employment any individual on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

## COUNT FOUR - RETALIATION

69. Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

70. In retaliation for Plaintiffs complaints regarding Defendants unlawful employment practices, Defendants took adverse employment actions against Plaintiff by not allowing Plaintiff to work during the Summer schedule.

71. Although Defendants offered Plaintiff to teach Thursday and Friday at Mercy Hospital, Plaintiff other job requires Plaintiff to work on Fridays. Plaintiff has worked for Miami Dade for the past 4 years and 6 months and always worked on Tuesday and Thursday nights. To work

Fridays, Plaintiff would have had to give up the other job and would not be able to afford his mortgage, electric bill, Food and etc.

72.     Defendants failed to provide Plaintiff with promotional opportunities to a Full Time Faculty Position.

73.     Defendants ultimately denied Plaintiff Summer Classes.

74.     By reason of Defendants conduct as alleged herein, Plaintiff is entitled to all remedies available under the Prayer for Relief.

## **PRAY FOR RELIEF**

WHEREFORE, the Plaintiff respectfully request that this Court:

A.      Grant a permanent injunction enjoining Defendants, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of Race and National Origin Discrimination.

B.      Order Defendants to Institute and carry out policies, practices and programs that provide equal employment opportunities for its employees regardless of Race and National Origin, and eradicate the effects of its past and present unlawful employment practices.

C.      Order to make the Plaintiff whole by providing appropriate back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.      Order Defendants to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, humiliation, inconvenience, loss of dignity, injury to livelihood, could

not afford to marry or be in a relationship, dental embarrassment (loss of teeth), and mental anguish, in the amount of $10,000,000.00 (Ten Million Dollars), plus $200,000.00 per year for the next twenty five years.

E.     Order Defendants to pay Plaintiff Punitive Damages for the malicious and reckless conduct complained of above in the amount of $10,000,000.00 (Ten Million Dollars)

F.     Grant such further relief as the Court deems necessary and proper in the public interest and all the other victims that have been discriminated against by the Defendants at Miami Dade College, that tried to get full time faculty positions to support their families and had to leave Miami Florida to get full time employment where discrimination does not exist.

Dated this 31 day of May 2016                                    Respectfully Submitted,

*[signature]*
Robert J. Sarhan, MD
22795 SW 212 Ave
Miami, Florida 33170
Tel.No.305-338-6160
drrob2007@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and Correct Copy of the foregoing was sent to Suzanne A. Singer Rumberger, Kirk & Caldwell, P.A. Brickell City Tower, Suite 3000  80  S.W. 8 Street 33130-3037 Post Office Box 01-9041 Miami, Florida 33101 on this 31 day of May 2016.

*[signature]*
Robert J. Sarhan, MD
22795 SW 212 Ave
Miami, Florida 33170
Tel.No.305-338-6160
drrob2007@yahoo.com

# EXHIBIT A

Robert Sarhan, MD
22795 SW 212 Ave
Miami, Florida 33170
Tel.NO.305-338-6160
drrob2007@yahoo.com

12/2/2014

Dr. Mark Everett
Miami Dade College
School of Health Sciences
950 N.W. 20 Street
Miami, Florida 33127-4693

Dear Dr. Everett,

   Recently I was overjoyed to be interviewed for not one but two positions available to teach at the Medical Campus as a Full Time Faculty Member to teach Physician Assistant in your PA Program. Job Description position id 406300 which was posted on 10/21/2014.

   An over view of our conversation which took place on 12/1/2014, at 3:54 pm we spoke for 32 minutes and 56 seconds. During that time I explained to you my concerns about the discrimination that is taking place at Miami Dade College Medical Campus by Dayne Alonso PA-C and her staff, which is made up of exclusively of people of Cuban Origin. I asked you, where is the Diversity here at Miami Dade College? I had absolutely no chance of getting this position due to the Discrimination taking place by a certain group of people of Cuban Origin, that according to the Equal Employment Opportunity Commission (EEOC) are violating the Civil Rights Act of 1964 (Title VII). I was only interviewed because I am a Caucasian male and it was to cover up the discrimination. They had to interview me, but many others knew, that since the panel is made up exclusively of Latin or Cuban staff, I would not get the position so very needed to support my family. This was already preordained, they were going to give these two positions to their own people of the same Ethnic Origin, and this is discrimination and this is exactly what happened.

   I have worked for you and Miami Dade College for 4 years. I have been working as an Adjunct Professor teaching Microbiology, Anatomy and Physiology, Biology, Introduction to Health Care and Microbiology Labs and Anatomy and Physiology

Labs. Over the last 4 years I have been scheduled to teach 2 classes a semester, however at times I was very happy to teach more than two classes when given the opportunity. According to you, these 2 people of Cuban Origin did not work for Miami Dade College and were brought in by Dayne Alonso. Shouldn't I have been given some type of priority to gain a full time Faculty position, since I worked for Miami Dade College for the last four years? Yet, people of Cuban Origin can walk right into Miami Dade College and be placed in full time faculty positions because of their Ethnicity, this is discrimination. They should have been given my position as Adjunct Professor, and I should have been given this Full Time Faculty Position.

The first, second and third interview including my presentation were exceptional. My presentation on Pulmonary Hypertension was very thorough and exceptional for the 20 minutes which were allowed. Even Dr. Perez stated, that I was very qualified for this position and have outstanding credentials and experience. Although I seen my competition in the Hallways, I was the only candidate of my race. I cannot sit back and allow Miami Dade College to discriminate, like the practices that have taken place in Miami over the last 20 years; where there has been a mass exodus of Good Americans forced to leave there homes in which they lived their whole lives, because of the prejudice of the Cuban community, in which they hire their own people and discriminate against the very people that opened the doors to them and their parents to come to Miami for safe haven from Cuba.

According to the EEOC, I have been discriminated due to my Race, National Origin and my Age which is over 40 years old. Dr. Everett, At no time do I think you had anything to do with this discrimination, I absolutely believe this was done at the hands of Dayne Alonso and staff who are of Cuban Origin. They lied to you, or manipulated you to believe that the two chosen for the position were better qualified then myself, unfortunately they both just happened to be Cuban, what a coincidence. They pulled the wool over your eyes, but I am here to say you will never find a more enthusiastic and harder worker that cares about these students then myself. I went on to say, I even take my own time to help tutor students that fall behind in private sessions to pass Microbiology or Anatomy Courses, without no compensation, but do it for the students because I care.

I am devastated that you would think that people that are of higher education, here at Miami Dade College would not commit such discrimination, but unfortunately or in reality this is happening on a daily basis here in Miami Florida. Out of my respect for you, I will wait and speak with you next week to discuss a solution and look forward to time that we can sit down and discuss this matter. It is crystal clear that Dayne Alonso should not have any authority and should be dismissed from her position for violating the Civil Rights Act of 1964.

I have asked you for the resumes of the two that were hired, but you stated that you cannot send them. I only hope that you will keep these resumes in a safe place so they cannot be altered. I would like copies next Tuesday when you return. Again, Dr. Everett, I have much respect for you and I know you had absolutely nothing to do with this discrimination and is why I have not started any type of legal action. However, this is what happens when you do not have Diversity at Miami Dade College, which is very important in our society, for our society to survive instead of one ethnic group to be superior.

Thank You

*[signature]* MD
Robert Sarhan, MD